# KENNETH A. PAUL
ATTORNEY AT LAW

TRINITY BUILDING
111 BROADWAY - SUITE 701
NEW YORK, N.Y. 10006
TELEPHONE: (212) 587-8000
FAX: (212) 374-1506

kpaul@kennethpaulesq.com

October 30, 2013

<u>Via ECF and Regular Mail</u>
Honorable Carol B. Amon
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re: Re: <u>United States v. Benito Lopez-Perez</u>
                      11 Cr. 199 (CBA)

Dear Judge Amon:

      I represent Mr. Benito Lopez-Perez in the above-referenced matter. Please accept this letter as my sentencing memorandum on behalf of my client. Mr. Lopez-Perez is scheduled to be sentenced on November 13, 2013. I have reviewed with my client his Presentence Investigation Report ("PSR") dated August 7, 2013, and this letter memorandum incorporates our response and sets forth any objections to the PSR.

      As noted in the PSR, Mr. Benito Lopez-Perez pled guilty to two counts of this superseding indictment. Count Four had charged my client with violating 18 U.S.C. §1591(a), relating to Jane Doe #1. Count Twelve charged my client with violating 18 U.S.C. §2421, relating to Jane Doe #3. As set forth in my client's plea agreement with the government, Mr. Lopez-Perez pleaded guilty to the lesser-included offense of Count Four, specifically to 18 U.S.C. §1591(b)(2), and to the offense as set forth in Count Twelve and the violation of 18 U.S.C. §2421. (PSR, p. 3, ¶1).

      When Mr. Lopez-Perez entered a guilty plea to a lesser-included offense, pursuant to a plea agreement with the government, the agreement calculated the guidelines as follows:

<u>Count Four:  Jane Doe #1</u>

Base Offense Level   (§2G1.3(a)(2))                          30

Honorable Carol B. Amon
October 30, 2013
Page Two

| | | |
|---|---|---|
| Plus: | Participant unduly influenced minor to engage in prohibited sexual conduct (§2G1.3(b)(2)(B)) | +2 |
| Plus: | Offense involved the commission of a sex act  (§2G1.3(b)(4)) | +2 |
| Plus: | Vulnerable Victim (§3A1.1(b)(1)) | +2 |
| **Adjusted Offense Level** | | **36** |

### Count Twelve: Jane Doe #3

| | | |
|---|---|---|
| Base Offense Level   (§2G1.1(a)(2)) | | 14 |
| Plus: | Offense involved fraud and coercion  (§2G1.1(b)(1) | +4 |
| Plus: | Vulnerable Victim (§3A1.1(b)(1)) | +2 |
| **Adjusted Offense Level** | | **20** |

### Pseudo Count: Jane Doe #2

| | | |
|---|---|---|
| Base Offense Level   (§2G1.3(a)(2)) | | 30 |
| Plus: | Participant unduly influenced minor to engage in prohibited sexual conduct (§2G1.3(b)(2)(B)) | +2 |
| Plus: | Offense involved the commission of a sex act     (§2G1.3(b)(4)) | +2 |
| Plus: | Vulnerable Victim (§3A1.1(b)(1)) | +2 |
| **Adjusted Offense Level** | | **36** |

Honorable Carol B. Amon
October 28, 2013
Page Three

<u>Pseudo Count: Jane Doe #4</u>

| | |
|---|---:|
| Base Offense Level   (§2G1.1(a)(2)) | 14 |
| Plus:  Offense involved fraud and coercion  (§2G1.1(b)(1)) | +4 |
| Plus:  Vulnerable Victim (§3A.1.(b)(1)) | <u>+2</u> |
| Adjusted Offense Level | 20 |

<u>Multiple Count Analysis</u>
(§§2G1.1(d)(1), 2G1.3(d)(1) and 3D1.4)

| <u>Count</u> | <u>Unit</u> |
|---|---|
| Count Four | 1 |
| Count Twelve | 0 |
| Pseudo Count Jane Doe #2 | 1 |
| Pseudo Count Jane Doe #4 | <u>0</u> |
| Total Units | 2 |
| Highest Offense Level | 36 |
| Level Increase | <u>+2</u> |
| Total Adjusted Offense Level | 38 |

      On May 20, 2013, when my client pled guilty before Your Honor, he stated in his plea allocution what it was that made him guilty for the offense(s) to which he was pleading guilty and his statement to the Court was consistent with both the charge(s) and what was set forth in his plea agreement.

Honorable Carol B. Amon
October 28, 2013
Page Four

At that time Mr. Lopez-Perez stated the following:

"As to Count 4: During the period between January 2009 and August 2010, I together with others, did knowingly and intentionally recruit, house, entice and transport, a woman referred to in the indictment as Jane Doe #1, for the purpose of her engaging in prostitution. I did this by arranging for her to be transported from Mexico to the United States and once in the United States did arrange for her to stay in a house located in Queens, New York. It was from this house that she was transported to different locations for the purpose of prostitution. I did benefit financially from Jane Doe #1's prostitution activities and I did so knowingly and recklessly disregarding the fact that she was younger than 18 years old at the time."

Count 12 charged my client with violating 18 U.S.C. §2421 and in his guilty plea allocution he stated the following:

"As to Count 12: In or about April of 2006, I along with others did knowingly and intentionally transport a woman interstate, referred to in the indictment as Jane Doe #3, for the purpose and with the intent that she engage in prostitution."

My client's guilty plea allocution was accepted by the government as satisfactory to the charges, as set forth in this indictment, and consistent with the facts of the government's case.

Mr. Lopez-Perez has clearly demonstrated through his guilty plea his acceptance of responsibility and a two-level reduction is warranted, as per the plea agreement, resulting in an adjusted offense level of 36. Since my client has no criminal history, and consequently is in criminal history category I, his sentence guideline range of imprisonment is 188 – 235 months. (PSR, p. 11-12, ¶¶59-61). It was also agreed to and stipulated by the parties that my client would not be eligible for an otherwise additional one-level reduction, pursuant to U.S.S.G. §3E1.1(b), nor would he "advocate for a sentence below 188 months' imprisonment, either pursuant to the United States Sentencing Guidelines, consideration of the factors set forth in 18 U.S.C. §3553, or by any other means". I do not intend to violate those conditions, as agreed to by the parties and set forth in the plea agreement, and therefore will not request this Court to consider a sentence below the sentencing guidelines calculation of anything less than 188 months.

However, as set forth in the plea agreement, I do respectfully request Your Honor to consider a reduction, of whatever sentence is ultimately imposed, for the time my client was incarcerated in Mexico as a result of his arrest for this offense while awaiting extradition to the United States. On October 25, 2011, Mr.

Honorable Carol B. Amon
October 30, 2013
Page Five

Lopez-Perez was arrested in Mexico for these offenses. When he was initially arrested he was beaten and tortured while being held and questioned by the Mexican authorities. He thereafter remained housed in a prison for thirteen and one-half months in Mexico where he continued to endure very difficult living conditions. It was not until December 8, 2012, that my client was finally extradited to the United States. (PSR, pp. 1, 7, ¶28).

Your Honor should also be aware that my client's serious medical conditions have gone mostly unattended while he has been incarcerated at Queens Private Detention Center. The government has attempted, at my request, to follow-up on the various medical issues presented by Mr. Lopez-Perez. These medical concerns have included his being diabetic, having serious pain and discomfort in his back and leg, as well as an ongoing complaint regarding a skin infection, or skin tag and fistula, that apparently requires surgery. As I am sure the Court recalls, Mr. Lopez-Perez's continued discomfort and pain has even been apparent when he has had to appear before Your Honor for each and every court appearance and has been addressed on the record. The PSR does note that my client is diabetic but apparently probation is still waiting for his medical records to be provided by the facility. (PSR, p. 13, ¶74).

The section in the PSR that refers to the defendant's participation states facts that go beyond those my client has admitted to through both his plea agreement as well as his plea allocution. Consequently, he specifically objects to those references in the PSR where there is a sentencing guideline enhancement due to the application of the cross references as per Guideline §2G1.3(c)(3) and 2A3.1(b)(1) as well as per Guideline 2A3.1(b)(5). (PSR, pp. 7-8, 10-11, ¶¶28-30, 39-41, 46, 47).

The probation officer has obviously reached a different sentencing guideline conclusion than what was set forth by the parties through the plea agreement and acceptable to the government through my client's guilty plea allocution. Consequently, contrary to the government's position regarding my client's specific involvement in relation to each of the victims, the PSR states that the cross references in the Guidelines should be applied and therefore my client's sentencing guidelines are more than ten years higher than what was set forth in the plea agreement. I disagree with this conclusion. I would assume the government is more familiar with their own case than the probation officer and therefore is in a better position to make factual determinations as to the specific role(s) played by both my client and his co-defendants in relation to the different victims.

Honorable Carol B. Amon
October 30, 2013
Page Six

   Mr. Lopez-Perez grew up in San Miguel Tenancingo, Mexico. His family was extremely poor and could not afford to send him to school. My client was often the victim of violent physical abuse at the hands of his alcoholic father and this would often result in both he and his mother being kicked out of their own home and going homeless until they were allowed back into the home by the father. (PSR, p. 12, ¶66).

   Since my client was uneducated he remained unable to read or write until he was able to learn to do so while in custody these past two years. He has taken two English courses while incarcerated at Queens Private Detention Center. I intend to provide the Court with the certificates of his attendance and completion of these courses, along with others, at the time of sentencing. (PSR. p. 14, ¶77).

   In 2005, my client came alone to the United States for the first time. He illegally entered by flying from Mexico City to Nogales, California, and then made his way to Phoenix, Arizona. From there he was driven to Las Vegas and thereafter flew to New York City, where he lived in Queens and worked at a food market for approximately eight months. He returned to Mexico due to his son, Juan Lopez Cruz, becoming very ill where he remained for eight months taking care of his son before returning to New York City.

   When Mr. Lopez-Perez returned to the United States in 2006 he arrived this time with Jane Doe #1. They traveled the same route he had previously taken when he arrived to the United States on his first trip. He and Jane Doe #1 went to live in Queens at which time his brother, Jose Gabino Barrientos-Perez, had already been living in New York City with his wife, Jane Doe #3, for two to three months. It was during this period of time and upon my client's second trip back to the United States that he admittedly engaged in the prostitution business involving the victims of this case.

   Mr. Lopez-Perez and Jane Doe #1 remained in Queens together for approximately five months before he had to return to Mexico once again. This time he returned to assist his mother who was having legal issues concerning her home. While he lived back home in Mexico for seven months, Jane Doe #1 remained in Queens having moved in to live with Jane Doe #3.

   In March or April of 2008, Mr. Lopez-Perez returned to the United States and stayed for eight or nine months until January 5, 2009, when he returned to Mexico. This last time back was to help attend to his father, who was dying of cancer, and more importantly to be supportive for his mother. His father was ill for

Honorable Carol B. Amon
October 30, 2013
Page Seven

more than one year and died in 2011. My client remained in Mexico from January of 2009 until the date of his arrest on October 25, 2011. (PSR, p. 12, ¶66).

Mr. Lopez-Perez has accepted full responsibility and acknowledged his involvement in having women engage in prostitution. He admittedly took advantage of Jane Doe #1's young age by recruiting, enticing, and transporting her for the purpose of prostitution. He also engaged in this activity with the other woman referred to in Count Twelve, as Jane Doe #3, as well as the two women, Jane Doe #2 and Jane Doe #4 referred to in the Pseudo Counts.

I have enclosed several letters addressed to the Court on behalf of my client. For many of these individuals it was very difficult to write such a letter since, as the Court will take notice, they are limited in education and ability to fully express themselves about their feelings toward Mr. Lopez-Perez. Nevertheless, I trust these letters will assist Your Honor in a better understanding of my client and of those who support him.

As this Court is well aware, the sentencing guidelines are now advisory, post *United States v. Booker*, 125 S. Ct. 738 (2005), and are but one of five factors to be considered in determining a sentence, district courts are nevertheless directed to determine the applicable guidelines range and consider it along with all the factors listed in 18 U.S.C. §3553(a). *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). The Supreme Court's opinion in *Gall v. United States,* 128 S. Ct. 586 (2007), "rejected an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and further "rejected the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." According to the *Gall* case, the sentencing guidelines provide a sentencing court with a "starting point and the initial benchmark". The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. The Court of Appeals cannot overrule a district court's sentence that is based upon the consideration of the §3553(a) factors along with a reasonable and rationale determination in light of the record in the particular case. The Supreme Court in *Kimbrough v. United States,* 552 U.S. 85, 128 S. Ct. 558 (2007), rejected an attempt to give special weight to the sentencing guidelines. These cases clearly state that the district courts are only required to look to the advisory guidelines as they should also look to all the other factors set forth in 18 U.S.C. §3553(a).

I do not in any way intend to argue to this Court, or pretend, that the crimes to which my client has admitted to participating are not extremely serious. However, I do believe that a sentence of fifteen plus years would be one that more

Honorable Carol B. Amon
October 30, 2013
Page Eight

than satisfies all of the factors to be considered in imposing a sentence as set forth in 18 U.S.C. §3553(a). It would certainly take into consideration the "nature and circumstances of the offense" as well as the "characteristics of the defendant" while reflecting the "seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense". Such a lengthy sentence would "afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant". 18 U.S.C. §3553(a).

It is clear that if this Court sentences Mr. Lopez-Perez to 188 months all of the statutory concerns embodied by 18 U.S.C. §3553(a) will be satisfied. As noted by the Honorable Alvin K. Hellerstein in *United States v. Carvajal*, No. 04 Cr. 222 AKH, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005) "rehabilitation is a ...goal of punishment...That goal cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind, for we are created in the image of God. A judge should be hesitant before sentencing so severely that he destroys and takes away all possibility of useful life. Punishment should not be more severe than that necessary to satisfy the goals of sentencing".

Thank you for your consideration.

Respectfully,

Kenneth A. Paul

KAP: ng

Cc:   AUSA Taryn A. Merkl            (Via ECF)

      Ms. Victoria M. Aguilar
      United States Probation Officer   (Via ECF)

      Co-Counsel                     (Via ECF)