1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,        : 11-CR-00199(CBA)
                                 :
                                 :
                                 :
      -against-                  : United States Courthouse
                                 : Brooklyn, New York
                                 :
                                 :
                                 : Friday, January 10, 2014
BENITO LOPEZ-PEREZ, ET AL.,      : 9:30 a.m.
                                 :
         Defendant.              :
                                 :

- - - - - - - - - - - - - X


       TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE CAROL B. AMON
            UNITED STATES CHIEF DISTRICT JUDGE



                A P P E A R A N C E S:


For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                 BY:  TARYN A. MERKL, ESQ.
                      ERIK PAULSEN, ESQ.
                      Assistant United States Attorney


For the Defendant:   FLORIAN MIEDEL
Benito Lopez-Perez    111 Broadway
                      Suite 1401
                      New York, New York 10006
                   BY: FLORIAN MIEDEL, ESQ.

A P P E A R A N C E S:   (Continued)


For the Defendant:      FEDERAL DEFENDERS OF NEW YORK
Jose Gabino                 16 Court Street
Barrientos-Perez            3rd Floor
                            Brooklyn, New York  11201
                        BY:DOUGLAS G. MORRIS, ESQ.

For the Defendant:      MORVILLO ABRAMOWITZ GRAND
Anastasio               IASON ANELLO & BOHRER, P.C.
Romero-Perez                565 Fifth Avenue
                            New York, New York 10017
                        BY:ROBERT M. RADICK, ESQ.




Court Reporter:         VICTORIA A. TORRES BUTLER, CRR
                        225 Cadman Plaza East
                        Brooklyn, New York 11201
                        **VButlerRPR@aol.com**


Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.

```
                      Proceedings                        3
```

1           (In open court.)

2           (Judge CAROL B. AMON enters the courtroom.)

3           THE COURTROOM DEPUTY:  The United States against

4    Benito Lopez-Perez.

5           Please state your appearances for the record.

6           MS. MERKL:  Taryn Merkl and Erik Paulsen for the

7    United States.

8           Good morning, Your Honor.

9           MR. PAULSEN:  Good morning, Your Honor.

10          THE COURT:  Good morning.

11          MR. MIEDEL:  Good morning, Your Honor.

12          Florian Miedel for Mr. Benito Lopez.

13          THE COURT:  Good morning.

14          MR. MORRIS:  Douglas Morris, Federal Defenders,

15   standing in for Peter Kirchheimer for Jose Gabino

16   Barrientos-Perez.

17          MR. RADICK:  Robert Radick of Morvillo Abramowitz

18   Grand for Anastasio Romero-Perez.

19          THE COURT:  Good morning.

20          All right, I think this matter was put on the

21   calendar today to deal with the issues surrounding the guilty

22   plea of Mr. Benito Lopez-Perez.  Other counsel had expressed a

23   desire to be here, but I don't think there are other issues

24   regarding other counsel?

25          MS. MERKL:  I think that's generally correct,

Proceedings                                        4

1   Your Honor.

2          Although I did want to just inquire after the close

3   of the proceedings as to the status of the outstanding issues

4   pertaining to sentencing that you had asked for further

5   briefing on.

6          THE COURT:  Why don't you address that now.

7          MS. MERKL:  Yes, Your Honor.

8          At the prior proceeding that was to have originally

9   been the sentencing proceeding, the Court had raised questions

10  regarding the appropriateness of proceeding on the restitution

11  in the manner advanced by the Probation Department, the

12  Government submitted some briefing and some supporting case

13  law in support of that approach.

14         I also just recently received a transcript of

15  another court in this court that adopted that same approach

16  under the Second Circuit's analysis.  I'm happy to submit that

17  transcript to Your Honor should you like that additional

18  authority.

19         THE COURT:  How is it calculated, though?  Is

20  restitution calculated for each of the victims?

21         MS. MERKL:  The way that the Government had, the way

22  that the victims had submitted their affidavits to Probation

23  was based on their --

24         THE COURT:  Lost fees?

25         MS. MERKL:  Their lost revenue from the work that

Proceedings                                            5

1    they were required to do, and I believe not all, I don't think

2    all four Jane Does submitted the loss affidavit, but for those

3    who did, that was the manner in which they had calculated

4    their restitution.

5            THE COURT:  Well, obviously, it can only --

6    restitution only goes to counts of conviction.  So have you

7    separated that out?  Is that clear?

8            In other words, the restitution goes to the victim

9    they entered a guilty plea to, not to other victims.

10           MS. MERKL:  Correct.

11           And defendants pled to different Jane Does, so we

12   will make sure that is completely clear, but I believe that it

13   is separated by Jane Doe.

14           THE COURT:  Maybe.

15           MS. MERKL:  And then, Your Honor, the other issue

16   that was outstanding that I know is of concern to the victims

17   in this case is whether Your Honor has reached a decision on

18   permitting the Jane Does to proceed anonymously.

19           We submitted authority in support of our request to

20   allow that, and the service providers and lawyers who are

21   helping those victims are trying to determine how they plan to

22   proceed with regard to that February sentencing date.  So if

23   at all possible we would like to have some guidance from the

24   Court as to your intentions in permitting the Jane Does to

25   proceed anonymously.

```
                        Proceedings                    6
```

1       THE COURT:  Well, I think they were going to just

2   testify by their first names; correct?  The way they had

3   submitted affidavits.

4       MS. MERKL:  Some, I believe one of the Jane Does was

5   prepared to use her first name.

6       THE COURT:  Who is that?

7       MS. MERKL:  Jane Doe 1 -- no, I'm sorry,

8   Jane Doe 4 -- honestly, Your Honor, I'd have to go back and

9   double-check with their attorneys because people have

10  different comfort levels at different points in time.

11      THE COURT:  Well, if I don't know what their

12  position is, I don't know.

13      MS. MERKL:  Well, in my letter we asked for the

14  Court to issue an order as to whether or not they would be

15  permitted to proceed under Jane Doe, just Jane Doe, or whether

16  they would be required to disclose some portion of their name.

17      THE COURT:  Well, but let's not make an issue out of

18  something that doesn't need to be made an issue out of.

19      If they are not objecting to being identified by the

20  name that is some of the parties have become familiar with,

21  such as Carmen, et cetera, then why don't we determine what

22  has to be decided?

23      MS. MERKL:  I know that two of the victims are not

24  comfortable disclosing their names.  One of them may be.

25      So we don't have a monolithic issue.  They are

Proceedings                                              7

1   individuals with different preferences and concerns.

2            THE COURT:  All right.  I don't think there was any

3   response by defense to your submission on that, because on the

4   day in question, no one objected to, from the defendant team

5   objected to it.

6            MS. MERKL:  Mr. Kirchheimer had expressed some

7   objections.

8            MR. RADICK:  Mr. Kirchheimer did have some

9   objections, Your Honor, to my recollection.  And it's an issue

10  that we've been discussing, Mr. Kirchheimer and I have been

11  discussing.

12           We were also intending to discuss it with Mr. Miedel

13  depending on where things went with today's proceeding.  It

14  might have changed the entire scope of this case, depending on

15  what happened here today.

16           THE COURT:  What changes the entire --

17           MR. RADICK:  If there was not a guilty plea entered

18  here today.

19           THE COURT:  Oh, yes.

20           MR. RADICK:  It was unclear where we were going.

21           THE COURT:  Right.

22           MR. RADICK:  And we would need to address the

23  victims' identity at sentencing or not.  So, that I think that

24  what would be useful is for us on this side of the room have a

25  little bit further discussion about the issue.

Proceedings                                                    8

1          It is also unclear to me, Judge, whether what the

2     Government is proposing is that the victims identify

3     themselves to the Court in some fashion at all, whether

4     privately or in open court, or if the Government is simply

5     saying the Court doesn't feed to know their names in any way

6     whatsoever; that they should simply be allowed to identify

7     themselves to the Court anonymously, and you would, there

8     would be no record of their actual names before they

9     presumably give statements under oath, victim impact

10    statements before Your Honor.

11         That would raise some concerns, at least, at the

12    very least, if they were not going to identify themselves to

13    the Court whatsoever.

14         THE COURT:  You know, I have to know who's who

15    regarding the charges in the indictment.  I have to have some

16    identification that this person is the person referred to in

17    Count 2, or the person referred to in Count 3.

18         MS. MERKL:  Right.  And we had anticipated using

19    their Jane Doe numbers, which have been used consistently

20    throughout the case.

21         MR. RADICK:  Your Honor --

22         MS. MERKL:  And just to make clear, the name,

23    Mr. Radick, is not correct, that the victims would be speaking

24    under oath, and I don't think that is a requirement of a

25    victim impact statement.  I don't think they would have a

Proceedings                                          9

1    concern about that, but that's certainly not the normal

2    practice.

3              MR. RADICK:  It is not, Your Honor.  I think before

4    they make statements to the Court that are going to be used to

5    effect the sentences of the individual defendants, these

6    victims should be identified to the Court whether they, at

7    very least and I don't want to speak yet to the public

8    identification, but at the very least the Court should know

9    who they are, by their names, so that if it turns out that

10   anything they said turned out not to have been truthful, that

11   there is a way of actually making there be some meaningful

12   penalty for that.

13             It seems very bizarre to me to have the Court hear

14   from people you don't even really know who they are.

15             THE COURT:  Well, if we all know, basically, that,

16   who Jane Doe 1 is, who Jane Doe 2 is, who Jane Doe 3 is.  If

17   they identify themselves by that name in court and the

18   Government confirms that is the person, which they can do, the

19   Government can confirm that that is the person that we have

20   identified as Jane Doe Number 1, why isn't that satisfactory?

21             MR. RADICK:  They should identify themselves.

22             THE COURT:  So you want to have them identify

23   themselves on the record like in some sealed fashion?

24             MR. RADICK:  At the least, yes.  That's what I'm

25   saying.

Proceedings                               10

1           I think that's actually necessary for the proceeding

2    to be appropriate and meaningful.

3           THE COURT:  Has anyone responded to what the

4    Government said?  Has there been a response filed by any of

5    the defendants with regard to the Government's submission?

6           MS. MERKL:  There hasn't, Your Honor.

7           And I would be very curious to see if there is any

8    authority for the requirement under the Crime Victim Rights

9    Act that they are required in some fashion to state their

10   names.  The case law that we were able to locate did not have

11   that requirement.

12          THE COURT:  It seems like we're already at

13   January 10th, when did you file your letter?  It was already

14   some time ago.

15          MS. MERKL:  It was within a week after the prior

16   sentencing proceeding.

17          THE COURT:  And I think that was November 21st?

18          MS. MERKL:  I believe so.

19          THE COURT:  I'd be very surprised if there are some

20   objections to this procedure that we're all sitting around

21   hear being it now.

22          MR. RADICK:  I mentioned, Your Honor, that we wanted

23   to see where we went with today's proceeding.

24          THE COURT:  I don't know why that would really make

25   a difference.

Proceedings                                            11

1              Your clients had entered guilty pleas, their

2    sentencings are scheduled.  I don't know why that would have

3    changed.

4              MR. RADICK:  Because it was a global plea agreement,

5    Your Honor, that the Government could potentially have

6    withdrawn the entire plea for everyone and proceeded to trial,

7    had Mr. Miedel's client decided not to enter his plea today.

8              THE COURT:  Did the Government advise counsel that

9    that was under consideration?

10             MR. RADICK:  Yes.

11             THE COURT:  The other issue that, were there any

12   other issues that you wished to address?

13             MS. MERKL:  No, Your Honor.

14             THE COURT:  The other issue that I had, and this may

15   have been addressed because I was actually focusing on the

16   plea this morning as opposed to the other issues, but the

17   Probation Department had indicated that their conversations

18   with the Bureau of Prisons indicated that they would get

19   credit for time served in Mexico, and as a result of that, the

20   Court should not take that into account in the sentence that

21   the Court imposes.

22             I believe one of the things that the Government was

23   going to do was make their own independent determination about

24   whether that was accurate or not.

25             MS. MERKL:  Yes, Your Honor.

Proceedings                                    12

1          I did call the sentencing calculation department and

2    inquired what they can do in the situation where it is an

3    international incarceration and they indicated that if it is

4    reflected -- that Probation Department was correct, that if it

5    is reflected in the PSR when they were incarcerated in Mexico,

6    that the Bureau of Prisons would take that date into account.

7    They were not going to wait and rely on the Mexican

8    authorities providing those documents, because as the Court

9    knows, that is obviously, that can be problematic.

10         They also, I asked if the Court made clear in its

11   judgment the method of calculation and ordered the BOP to take

12   that time into account, based on the date in the PSR, that

13   they would honor that.

14         THE COURT:  So, it is going to be the Government's

15   proposal that in proposing sentence, I not give credit for

16   that, but I make a note on the J and C that it is my

17   understanding that they are getting credit for this, or they

18   should get credit for that?  Because technically I can't order

19   the Bureau of Prisons to give credit for that.

20         MS. MERKL:  My understanding is that it is BOP

21   policy since that was the period of time they were awaiting

22   extradition to give them credit as part of whatever the

23   sentence the Court imposes, and that they would rely on the

24   date in the PSR.  That's what they've advised.

25         THE COURT:  So is it no longer a part of the

Proceedings                                    13

1   Government's agreement because we are adding the guilty plea

2   with regard to Mr. Miedel's client that will not object to

3   defendant's request that the sentence imposed by the Court

4   should be reduced by the duration of time the defendant was

5   incarcerated in Mexico?

6               MS. MERKL:  That is absolutely part of the

7   Government's agreement, we will not object.

8               How, the manner of execution of that, is what we're

9   just trying to figure out, but we do not object.

10               MR. RADICK:  Your Honor, may I be heard on this?

11               THE COURT:  I think the problem is that it says the

12   sentence imposed by the Court.  That is the problem with the

13   language.

14               Mr. Radick.

15               MR. RADICK:  Yes, Your Honor.

16               I just want to remind the Court of something that I

17   mentioned last time we were in front of Your Honor and we

18   discussed this issue, which is that there's concern on our

19   part, and based on experience with the Bureau of Prisons and

20   difficulties in getting credit for time served for any

21   circumstances, let alone involving international and foreign

22   contentions, concern as to whether the Bureau of Prisons will

23   indeed give the credit that is being represented, that they

24   will give.

25               And in light of that, and in light of the plea

Proceedings                                      14

1   agreement, and in particular in light of the circumstances of

2   these defendants, my client, in particular, or maybe not

3   unique, does not speak or read English and not actually read

4   more than a very modest amount of Spanish.

5           If he ends up not getting credit for the time, his

6   only remedy would be to file a habeas petition in the

7   jurisdiction where he is incarcerated, wherever that may end

8   up being, without the benefit of counsel.  And so rather than

9   have that risk, and rather than have a scenario where he does

10  not get credit because of the issues with the Bureau of

11  Prisons that have arisen in other cases that I have been

12  involved with, it would simply be better and consistent with

13  the plea agreement to reduce the sentence based on the time

14  served in Mexico, and to prevent the double-counting that

15  we've heard concerns about, I think, from the

16  Probation Department earlier, to simply make it clear that

17  credit has already been given on the judgment.

18          And so the Bureau of Prisons has recommended not to

19  give credit, and that way the issue is done.  It doesn't arise

20  at a later point, and it certainly doesn't arise at a point

21  where my client is really effectively unable to remedy it.

22          MS. MERKL:  Your Honor, I can inquire with the

23  sentencing computation people how they would interpret that

24  type of language in the judgment, and I can submit a letter.

25          THE COURT:  Well, is that the Government's position

Proceedings                    15

1    as well?  Because in your letter, and this is the plea we're

2    taking this morning, it says it will not object to the

3    defendant's request that the sentence imposed by the Court be

4    reduced by the duration of the time defendant was incarcerated

5    in Mexico.

6              The way that is phrased, it suggests that the

7    Government's position would be similar to what Mr. Radick has

8    just articulated.

9              MS. MERKL:  Your Honor, it's certainly one

10   interpretation of that language, and I think that the goal of

11   the language, and I think that the spirit of the agreement was

12   that we recognize that they should get credit for the time

13   that they were incarcerated in Mexico, and if the best way to

14   communicate that to the Bureau of Prisons is the manner

15   Mr. Radick suggests, I will confer with the sentencing

16   computation folks and submit a letter to the Court advising

17   them how they would interpret that language in the J and C.

18             MR. RADICK:  I'm sorry, but I think it is the only

19   way in which that language can be interpreted, is that there

20   is an agreement from the Government that the Court should give

21   credit or will not oppose giving of credit in the sentence

22   that is put on the judgment for these defendants.

23             It is not that we'll say it's okay or the Bureau of

24   Prisons later gives credit, it is that the Court should go

25   ahead and give them credit.  That's the position that's in the

Proceedings                                16

1   agreement that was negotiated.  I don't think there's really

2   more than one reasonable interpretation of that language and I

3   think that's what should happen.

4        THE COURT:  Ms. Merkl, I mean, we're taking a plea

5   this morning with the same language.

6        MS. MERKL:  I understand.

7        THE COURT:  So, whatever happened in the past we can

8   talk about.

9        Mr. Miedel, what is your view of this?  Your client

10  is entering a plea?

11       MR. MIEDEL:  I agree with Mr. Radick.  I also

12  believe if the Court puts in the J and C that it gave credit

13  for the time that these defendants spent in Mexico, and asked

14  the Bureau of Prisons not to give credit, I think the Bureau

15  of Prisons will honor that.

16       MR. RADICK:  As I said at the last proceeding, it is

17  hard enough for us to get the Bureau of Prisons to give credit

18  when they should.  They're certainly not going to give credit

19  when you tell then not to.  So the concern that has been

20  expressed by --

21       THE COURT:  Well, I'm not sure of that.  I'm not at

22  all sure of that.

23       MR. RADICK:  Based on my experience, I have trouble

24  believing that they're going to give double credit when there

25  is a part of the judgment that would say don't give credit.

1    They don't like to give -- it's hard enough to get

2  credit in the first place.  So to the extent there was a

3  concern, this is how this issue initially came up, because the

4  Probation Department, I think in an addendum, said that they

5  are already going to get credit, and so that there might be

6  double credit.

7    I find that to be exceedingly unlikely, if not

8  really functionally impossible, especially if you put in the

9  judgment that the Court's already taken into account the time

10  served in Mexico should be included that in the calculation of

11  the sentence and recommend that it not be.

12    THE COURT:  Well, surely if they had not known that,

13  and I understand your position, Mr. Radick, but had they not

14  known it wasn't articulated in the judgment that I give

15  credit, I don't know why you would say they wouldn't get

16  credit assuming the Probation Department is right, because

17  they would give credit.

18    MR. RADICK:  I am speaking solely under a scenario

19  where Your Honor makes clear in the judgment, as I mentioned

20  at the last court proceeding, that you give them credit.

21  Under those circumstances, how they could give credit a second

22  time, it's not possible.

23    And then, if it happens and the Government is, I

24  suppose, aggrieved, the Government won't be stuck in a cell

25  somewhere in Texas without a lawyer to help it remedy the

1  problem, the Government can remedy the problem.

2       THE COURT:  All right.  But we do need to resolve

3  today before we go forward with the plea, or whether it is the

4  Government's position that you intend to recommend, as it

5  appears to say in the plea agreement, that I take this into

6  account, and that if the Probation Department is correct, you

7  would then ask the Court to mark the report that credit has

8  already been given, if that is your construction.

9       We need to have a similar construction of this

10  provision in the plea agreement before we go forward so that

11  everyone knows what we're talking about.

12       MS. MERKL:  Your Honor, I tend to agree that the

13  Bureau of Prisons is not going to double count it, if it's

14  made completely clear on the face of the judgment, but I don't

15  work for the sentencing calculation department of the Bureau

16  of Prisons, so I can't promise that, obviously.

17       THE COURT:  Well, I know you can't promise it.  That

18  is not the position.

19       The question is what is your position in the plea

20  agreement?  What are you agreeing to?  I need to go over the

21  plea agreement.  We can't have Mr. Miedel saying the plea

22  agreement means one thing and the Government saying the plea

23  agreement means something else.

24       So, what we need to reconcile now is what commitment

25  is the Government, in fact, giving to this defendant before we

1   go forward with the plea.  We can't have people from the get

2   go saying the agreement means two different things.

3            MS. MERKL:  Understood.  I think the agreement is

4   clear that we don't object to his getting credit for that time

5   in prison.  I think the issue is just how to affect that in

6   the Court's judgment.

7            THE COURT:  The agreement says it will not object to

8   the defendant's request that the sentence imposed by the

9   Court.

10           It doesn't say that we do not object to the

11  defendant's request that he get credit for the time

12  incarcerated in Mexico.  If it said that, I would agree with

13  you.  But it says that the sentence imposed by the Court

14  should be reduced.

15           That means to me that the Government will advocate

16  at the time of sentencing that whatever sentence I impose, I

17  reduce it by the amount of time he'd spent in Mexico.  I think

18  that is the only rational construction of that provision.

19           The only way to do that -- two things.  First of

20  all, I can reject that recommendation all together.  I'm not

21  bound by that.  I can say they're going to get credit, I'm

22  persuaded they're going to get credit, I'm not going to cause

23  confusion, so I'm not bound by that, for certain.

24           But the Government is bound by the plea agreement

25  that they've signed, and the only way it seems to me that the

Proceedings                                              20

1    Government could abide by that condition and go forward is

2    perhaps the way that Mr. Radick has suggested.

3           MS. MERKL:  Well, Your Honor, I totally understand

4    that we need clarity as to what the defendant's exposure is,

5    but most respectfully, I don't know that it is not a valid

6    construction for the judgment, the J and C to say the Court

7    orders the Bureau of Prisons to consider the time they were

8    incarcerated in Mexico in calculation of sentence.

9           I mean, that is also consistent with the plea

10   agreement, because the Bureau of Prisons is thus reducing the

11   sentence of the Court.  And I am not trying to be overly

12   technical.  I just want to make sure that we get it right for

13   the people who are actually going to calculate the sentence.

14          MR. RADICK:  Your Honor, from my perspective, the

15   language is written the way it is for a very particular

16   reason, and that's to ensure that this be addressed up front

17   by the Court and not be left to the Bureau of Prisons in its

18   discretion, which then becomes very difficult to challenge or

19   refute.  So I would, to just try to be able to bring this

20   home, I would ask the Court to just enforce that part of the

21   agreement as it's written in the language that it's written.

22          THE COURT:  Well, for what is done in terms of the

23   pleas, no one is seeking to withdraw their plea based on this.

24          MR. RADICK:  No.  No.  No one is seeking to withdraw

25   their plea based on this.

Proceedings                                21

1          THE COURT:  Well, there is a past problem that the

2    Court would have to deal with because the guilty pleas have

3    already taken place with regard to the plea agreement.

4          But then there is a current problem that I am being

5    asked to accept the plea pursuant to an agreement that the

6    parties are telling me they have different views on.  That has

7    nothing to do with what I think is going to happen.

8          I just don't know how I accept a plea pursuant to an

9    agreement that is not an agreement, because the parties have a

10   different view of what one provision means.  I don't

11   determine what the -- the provision, it seems to me in the

12   first instance before a plea is accepted, has to be agreed on

13   by the parties.

14         Am I missing something, Mr. Miedel?

15         MR. MIEDEL:  Your Honor, the way I read this

16   language is simply that the agreement between the parties is

17   that the Government will not object to us making that request

18   at the time of sentencing for you to reduce the sentence based

19   on the time that my client spent in Mexico.

20         How you decide to do that, ultimately, I guess, is

21   up to you, as you've indicated.  Their position is simply that

22   they're not going to object to us making that request and

23   that's what it says in the plea agreement.

24         And I don't think that Ms. Merkl has stated anything

25   other than that she's not going to object to us making that

Proceedings                              22

1    request.  So I don't think there is actually a disagreement.

2           THE COURT:  Well, is it correct, Ms. Merkl, if

3    Mr. Miedel says to me, as Mr. Radick has said, Judge, I want

4    you to reduce the sentence by, pick a number, ten months,

5    because I don't trust the Bureau of Prisons to do that

6    correctly, and so I want you to reduce the sentence by ten

7    months.  If you want to avoid a problem, put on the J and C

8    that I've already given him credit for that.

9           Is that something that you are not going to object

10   to?

11          MS. MERKL:  We are not going to object.  The party

12   that raised the double counting concern was the

13   Probation Department, and we endeavored to look into it at

14   Your Honor's request and to provide the factual answer to the

15   Court's question, but we don't object to their application

16   that they're going to make and have made when we originally

17   came for sentencing in this case.

18          I think Mr. Miedel's correct, that there's no

19   disagreement between the parties.  It's just a question of how

20   Your Honor chooses to make it clear.

21          THE COURT:  But you are not going object to his

22   request that the way I do it, this is what he's going to

23   request, is that the way I do it is that I take into account

24   the time in the sentence I impose and that I, to avoid the

25   double-counting concerns that Probation has noted, that I just

Proceedings                                        23

1    mark that on the J and C that I've already given him credit.

2             You are not going to object to that.

3             MS. MERKL:  No.

4             THE COURT:  Okay.  Then I suppose we don't have an

5    issue.

6             And obviously, you are going to maintain your

7    position with respect to the, that you have just articulated,

8    with respect to the other two defendants.

9             MS. MERKL:  Of course.

10            THE COURT:  And you are going to inquire, though,

11   and provide the Court with information that you gather from

12   the Bureau of Prisons about whether they would honor that

13   statement by the Court.

14            MS. MERKL:  Absolutely.

15            MR. RADICK:  Your Honor, I'm sorry.  I'm not clear

16   which statement, the one about not giving credit or the one

17   about the one you recommend, which one?

18            THE COURT:  I think the statement that the

19   Government indicated that they were going to inquire about was

20   whether if I gave the credit in my sentence, but put a

21   notation do not give credit again to the Bureau of Prisons,

22   whether that is something they would understand and honor,

23   because I believe, though, the information gathered by

24   everyone so far, as articulated this morning by Ms. Merkl, is

25   that they will give credit as set forth in the

Proceedings                        24

1    Probation Department, as set forth in the Probation report.

2           So, to the extent that the Government hadn't

3    articulated a position on that before, they have said this

4    morning that it is their understanding from speaking to the

5    Bureau of Prisons that if it is clearly shown in the

6    Pre-Sentence Report when they were picked up pursuant to the

7    warrants of the United States, and that period of time they

8    spent in Mexico, that's in the PSR, that they would give

9    credit.

10          So, it is the second question that Ms. Merkl is

11   seeking guidance on.

12          MR. RADICK:  Thank you.

13          THE COURT:  Where is the new plea agreement?

14          MS. MERKL:  Your Honor, just so we have clarity of

15   the record, I just want to explain for the record what the

16   parties decided to do.

17          Mr. Lopez-Perez, as the Court knows, allocuted to

18   two counts in his prior plea proceeding, Count 3 and Count --

19   Count 4 and Count 12.  Based on our review of the plea minutes

20   and our prior conversations in this case and my conversations

21   with Mr. Miedel, we don't see any defect with regard to

22   Count 12, and for the purpose of clarity, we decided to use

23   his same plea agreement that he already executed and we've

24   modified the references to Count 4 to make them references to

25   Count 3, and Mr. Miedel and I have initialed every handwritten

Proceedings                                    25

1    change in the agreement and then the parties have signed the

2    signature page again on the back with today's date, and in the

3    prior proceeding, the plea agreement was marked as

4    Government's Exhibit Number 3.

5            It still has that annotation on it and I have added

6    an "A" after the 3 and today's date to differentiate it from

7    the prior plea agreement.  So, this is now the original for

8    today's proceeding, which I believe, and the Court can

9    obviously choose to do what it prefers to do, that we only

10   need to deal with the Count 3 issue, but Count 12, from our

11   review of the record, seems fine.

12           I don't believe Mr. Miedel has any objection to the

13   Court maintaining its acceptance of that plea.

14           MR. MIEDEL:  That's correct, Your Honor.

15           THE COURT:  All right, can I see the new plea

16   agreement?

17           Let me ask another question, Ms. Merkl.

18           I think that with regard to the guideline

19   calculations, are you standing by the guideline calculations?

20   Because I had thought that you may have suggested -- because

21   they're different from Probation; correct?

22           MS. MERKL:  They are different from Probation's,

23   Your Honor.

24           THE COURT:  And didn't you concede in part that

25   Probation was correct about some of their calculations?

Proceedings                                    26

1          MS. MERKL:  Your Honor, the dispute was relating, in

2     large part, to the calculation for what was then Count 4, is

3     Count 3.

4          As Your Honor knows, this was a global agreement and

5     Mr. Lopez-Perez entered into this agreement in good faith.

6     The Government made a good-faith estimate of the guidelines at

7     the time.  To the extent the Court is not going to concur with

8     the Government's plea agreement, we stand by the plea

9     agreement as we stated at the prior sentencing proceeding.

10         It's obviously our estimate.

11         THE COURT:  Including this pseudo-count and all of

12    that?

13         MS. MERKL:  Well, Your Honor, as you may recall,

14    that was the Government's interpretation of how 2G1.3 applied

15    to the case.  The issue that was litigated at length at the

16    prior proceeding is whether or not we were going to be within

17    the 2G1.3 guideline, or moving over to the 2A guideline.

18         Again, Mr. Lopez-Perez made his decision way back

19    when to enter into his guilty plea with regard to Count 12 and

20    in part reliance of the Government's estimate of the overall

21    guidelines, that count is unaffected by the possible

22    miscalculation as to Count 3 and 4.

23         The Government feels that under the circumstances

24    where there's one count to which he's already pled guilty, we

25    are not in a position to change the bargain that he has

Proceedings                                    27

1    already entered into with the Government.  It is our, the

2    Government's estimate.

3            THE COURT:  I'm sorry, were you finished?  I thought

4    you were still --

5            I'm sorry, it's the Government's what?

6            MS. MERKL:  It's the Government's estimate, and if

7    there are disagreements about that stip, so be it, but given

8    the situation and the procedural history of the case, in

9    conversations with Mr. Miedel, we decided to continue giving

10   Mr. Benito Lopez the benefit of this bargain and the bargain

11   that all of the defendants had entered into as part of the

12   global agreement.

13           THE COURT:  So am I correct that the charge in

14   Count 3 is an identical charge to the charge in Count 4, but

15   just a different time period?

16           MS. MERKL:  Yes.

17           THE COURT:  The language is different?

18           MS. MERKL:  Your Honor, I was just about to point

19   that out.

20           The reason for the split in the count was as of

21   December 2008 the Trafficking Victims Protection Act added

22   reckless disregard as a mens rea possibility, whereas prior to

23   that the time frame alleged in Count 3 from 2005 to 2008, the

24   defendant needed to know the age of the victim, or the means

25   of force that were to be employed.

Proceedings                                    28

1          I would point out that at the prior allocution

2    Mr. Benito Lopez, in fact, allocuted to knowing that

3    Jane Doe 1 was under age at the time for transportation, and

4    that is at pages 57 to 58 of the plea allocution that was

5    heard on May 20th, 2013.

6          So, based on the Government's review of the record,

7    Mr. Lopez-Perez has already effectively allocuted to the

8    essential elements of Count 3, but not the requisite time

9    frame.

10         Mr. Miedel can correct me if he disagrees.

11         MR. MIEDEL:  Thanks.  That is correct.

12         THE COURT:  Are the penalties exactly the same?

13         MS. MERKL:  They are, Your Honor.  I double-checked

14   the penalties against the old law and the newer book and the

15   only change that I was able to discern was a change in the

16   sub-numbering for the restitution, which I actually did change

17   manually in the plea agreement, but other than that, the

18   penalties are identical.

19         THE COURT:  Why is it a lesser included?

20         MS. MERKL:  Your Honor, we did not anticipate that

21   Mr. Lopez-Perez was going to allocute to the force element.

22   The force element is what brings it to the 15-year statutory

23   mandatory minimum as opposed to the prostitution of a minor,

24   which brings it under the ambit of the ten-year mandatory

25   minimum.

Proceedings                                        29

1          THE COURT:  So, when was it changed?  When was the

2     language changed?

3          MS. MERKL:  December 2008.

4          THE COURT:  Do you have the actual language with

5     you?

6          MS. MERKL:  Your Honor, I did not bring the 2008

7     code back.  I apologize, I should have thought to do so.

8          If we don't have one readily available to the Court,

9     we can have someone bring it, run back for it.

10          THE COURT:  I just want to track the language.  I

11     want to double-check the penalties.

12          MS. MERKL:  I note that in the statutory citation

13     for Count 3, we indicate clearly on the face of the indictment

14     that it's based on the 2008 code book.

15          (Pause in the proceedings.)

16          THE COURT:  All right.  So, what was the age of

17     Jane Doe 1 during Count 3?

18          MS. MERKL:  Your Honor, I believe she indicated that

19     she was 14 when the defendants recruited her, and so she was

20     between the ages of about 15 to 18 during the time period in

21     Count 3.

22          THE COURT:  So, first of all, I take it I have an

23     application, Counsel, to withdraw the plea of Benito

24     Lopez-Perez to Count 4 of the superseding indictment?

25          MR. MIEDEL:  Yes, Your Honor, and to instead plead

Proceedings                                        30

1   guilty to the lesser included of Count 3 of the superseding

2   indictment.

3           THE COURT:  And I think he specifically does not

4   seek withdrawal of his previously entered plea to Count 12; is

5   that correct?

6           MR. MIEDEL:  That is correct.

7           THE COURT:  Does the Government oppose the

8   application that Mr. Benito Lopez-Perez be permitted to

9   withdraw his guilty plea to Count 4?

10          MS. MERKL:  Under the circumstances, no, Your Honor.

11          THE COURT:  All right.  So, the application that the

12  plea be withdrawn with respect to Count 4 is granted.

13          Now, I take it you have a separate application this

14  morning, Counsel, and what is that?

15          MR. MIEDEL:  Yes.  Mr. Benito Lopez-Perez offers to

16  plead guilty to the lesser included count within Count 3 of

17  the superseding indictment.

18          THE COURT:  And that is pursuant to an amended plea

19  agreement marked Government's Exhibit 3-A; is that correct?

20          MR. MIEDEL:  That's correct, Your Honor.

21          THE COURT:  All right.  Mr. Benito Lopez-Perez, I am

22  told that you wish to enter a guilty plea to Count 3 of a

23  superseding indictment.  This is a very serious decision.  I

24  must make sure that you understand all of your rights and the

25  consequences of your plea.  That means that I have to ask you

Proceedings                              31

1    a whole series of questions, as I did the last time, and I do

2    require that your answers to my questions be made under oath

3    so my courtroom deputy will administer an oath to you to tell

4    the truth.

5           Please rise.

6           THE COURTROOM DEPUTY:  Please raise your right hand.

7    **B E N I T O    L O P E Z - P E R E Z**,

8           called by The Court, having been

9           first duly sworn, was examined and testified

10          as follows:

11          THE COURT:  All right.

12          You should understand that having been sworn to tell

13   the truth, you must now do that.  If you were to lie on

14   purpose in response to any question that I ask you, you could

15   face a further criminal charge for perjury or false statement.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If there is anything that I say that you

19   don't understand, then you tell me that you don't understand

20   it and I will try to make it plainer; is that clear?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  How old are you?

23          THE DEFENDANT:  34 years old.

24          THE COURT:  Are you presently or have you recently

25   been under the care of a doctor, including a psychiatrist for

```
                          Proceedings                    32
```

1    any reason?

2             THE DEFENDANT:  No.

3             THE COURT:  How far in school did you go?

4             THE DEFENDANT:  I didn't have any schooling.

5             THE COURT:  You never went to school?

6             THE DEFENDANT:  No.

7             THE COURT:  Your native language is Spanish; is that

8    correct?

9             THE DEFENDANT:  Yes.

10            THE COURT:  Can you read any Spanish?

11            THE DEFENDANT:  A little because I was taught in

12   prison in Mexico.

13            THE COURT:  All right.

14            In the past 24 hours, have you taken any pills,

15   drugs, medication or alcohol of any kind?

16            THE DEFENDANT:  No.

17            THE COURT:  Is your mind clear today?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Mr. Miedel, have you discussed the

20   question of a guilty plea with your client in this case?

21            MR. MIEDEL:  Yes, I have.

22            THE COURT:  In your view, does he understand all of

23   the issues in terms of withdrawing his previous plea and

24   entering this new plea?

25            Do you believe that he clearly understands what has

Proceedings                        33

1    occurred in this regard?

2              MR. MIEDEL:  Yes, I believe he does.  I have

3    explained it to him in detail with the help of a Spanish

4    interpreter.

5              THE COURT:  Do you believe that he understands all

6    of the rights that he is going to be waiving now by entering

7    once again a guilty plea to a different count?

8              MR. MIEDEL:  Yes.

9              THE COURT:  Do you have any question at all about

10   his competency to proceed?

11             MR. MIEDEL:  No, Your Honor.

12             THE COURT:  Now, let me ask you, Mr. Lopez-Perez,

13   have you had enough time to discuss with Mr. Miedel your

14   decision to enter a guilty plea in this case?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And has he explained to you about your

17   prior plea in this case to a different count, and why that

18   plea was withdrawn, and why you should now plead to a

19   different count?

20             Has he explained all of those issues to you?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Have you talked to him at some length

23   about these issues?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Are you satisfied to have him represent

Proceedings                                    34

1   you?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Now, let me turn to the charge that you

4   are now going to enter a guilty plea to.

5            The charge in Count 3 says that in or about and

6   between July of 2005 and December of 2008, within the Eastern

7   District of New York and elsewhere, that you, it identifies

8   you as the defendant, Benito Lopez-Perez, and then it

9   identifies another defendant as well, but what is only

10  relevant this morning is that you are charged.

11           It says that you knowingly and intentionally

12  recruited, enticed, harbored and transported, provided and

13  obtained by any means, a person, to wit:  Jane Doe 1 -- and

14  that is the person I think that has been referred to as

15  Carmen; is that correct?

16           MS. MERKL:  Yes, Your Honor.

17           THE COURT:  In and affecting interstate and foreign

18  commerce and did benefit financially and by receiving a thing

19  of value from participation in a venture that engaged in such

20  acts.

21           Now, this paragraph 1, he is not pleading guilty to

22  that; correct?

23           MS. MERKL:  Correct.

24           THE COURT:  So he is only pleading guilty to the

25  second part which says:

Proceedings                                    35

1           Would be used to cause Jane Doe 1 to engage in a

2    commercial sex act, and that Jane Doe had not attained the age

3    of 18 and would be caused to engage in a commercial sex act.

4           Now, the Government has to prove each and every

5    element of that charge beyond a reasonable doubt.

6           Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  And has your lawyer explained to you

9    what the Government would have to prove to support that

10   charge?

11          THE DEFENDANT:  Yes.

12          THE COURT:  In other words, they would have to prove

13   a number of elements that you, first of all, that you

14   recruited or enticed or harbored or transported a person.

15   They would have to prove it is the person identified there,

16   which is Jane Doe number 1, and that is the person they have

17   called Carmen.

18          They would have to prove that that enticing or

19   recruiting or harboring or transporting affected interstate

20   and foreign commerce; that it was done, that this was done to

21   benefit you financially by receiving things of value for these

22   acts, and that's money; and that it would be used to cause

23   this person, you would have to have caused this person,

24   Jane Doe number 1, Carmen, to engage in a commercial sex act,

25   and that means something for money.

Proceedings                                36

1          And then they would have to prove on this count to

2     establish this penalty, that during this period of time,

3     between July '05 and December of '08, at some point during

4     that period of time when all these acts were taking place,

5     that at least at one given point where all these thing are

6     happening, that this Jane Doe had not yet reached the age of

7     18.

8          Do you understand all of those elements?

9          THE DEFENDANT:  Yes.

10         THE COURT:  All right.  Now, what I would like to do

11    now is go over with you all of the rights that you would have

12    in connection with going to trial, and these will be rights

13    that you give up if you decide to plead guilty.

14         First of all, you have a right to persist in a plea

15    of not guilty.

16         Do you understand this?

17         THE DEFENDANT:  Yes.

18         THE COURT:  If you pled not guilty to the charge,

19    you would have a right, under the Constitution and laws of the

20    United States, to a speedy and public trial before a jury with

21    the assistance of your attorney.

22         Do you understand?

23         THE DEFENDANT:  Yes.

24         THE COURT:  At any trial, you would be presumed

25    innocent.  You don't have to prove you're innocent.  Under our

Proceedings                                    37

1    system of law, it is the Government that has the burden of

2    proof and that is proof beyond a reasonable doubt that you are

3    guilty of the crime charged.  If the Government failed to meet

4    the burden of proof, the jury would have the duty to find you

5    not guilty.

6              Do you understand?

7              THE DEFENDANT:  Yes.

8              THE COURT:  In the course of a trial, witnesses for

9    the Government would have to come to court, they would have to

10   testify in your presence, your lawyer would have the right to

11   cross-examine those witnesses, he could raise legal objections

12   to evidence the Government sought to offer against you, he

13   could offer evidence in your behalf.

14             Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  He could also subpoena witnesses to

17   court.  That means make a person come to court and testify if

18   you believed that that particular witness would be someone

19   helpful to your case.

20             Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  At trial, you would have the right to

23   testify in your own behalf if you wanted to.  On the other

24   hand, could you not be forced to be a witness at your trial.

25   Under the Constitution and laws of the United States, no

Proceedings                                    38

1    person could be made to be a witness against himself.

2            So if you wanted to go to trial but you chose not to

3    testify, I would tell the jury they cannot hold that against

4    you.

5            Do you understand?

6            THE DEFENDANT:  Yes.

7            THE COURT:  If instead of going to trial you plead

8    guilty to the crime charged, and if I accept your guilty plea,

9    you will be giving up your right to a trial and all the other

10   rights I have just discussed.  There will be no trial in this

11   case and no right to an appeal on the question of whether you

12   did or did not commit the crime.  I will simply enter a

13   judgment of guilty based upon your plea.

14           Do you understand?

15           THE DEFENDANT:  Yes.

16           THE COURT:  If you do plead guilty, I am going have

17   to ask you questions about what you did in order to satisfy

18   myself that you are guilty of the charge.

19           You are going to have to answer my questions and

20   admit your guilt.  This means you would be giving up your

21   right not to indiscriminate yourself.

22           Do you understand?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Are you willing to give up your right to

25   a trial and all the other rights I have just discussed?

VB        OCR        CRR

```
                          Proceedings                    39
```

1           THE DEFENDANT:  Yes.

2           THE COURT:  All right.

3           Now, I have before me a plea agreement which has

4    been marked Government's Exhibit 3-A.  It is dated today's

5    date, January 10th, 2014.

6           Ms. Merkl, let me just confirm, does the 16-page

7    agreement before the Court contain the entirety of any

8    understanding that your office has reached with this

9    defendant?

10          MS. MERKL:  Yes.

11          THE COURT:  Okay.  And Mr. Miedel, is that your

12   understanding as well?

13          MR. MIEDEL:  Yes, Your Honor.

14          THE COURT:  Now, Mr. Miedel, did you go over the

15   terms of the plea agreement with the defendant?

16          MR. MIEDEL:  Yes, Your Honor.  I, as you know,

17   Mr. Lopez-Perez was represented previously by another attorney

18   and he already pled to the same identical plea agreement, but

19   for the changes that were discussed.

20          At that time the plea agreement was translated

21   word-for-word for him into Spanish.  I subsequently --

22          THE COURT:  He doesn't read Spanish.

23          MR. MIEDEL:  No, it was translated to him orally in

24   Spanish.

25          THE COURT:  Oh, okay.  I understand.

Proceedings                                    40

1          MR. MIEDEL:  I subsequently discussed the changes in

2     the plea agreement with him that we're agreeing to today and

3     the various terms of that agreement.

4          THE COURT:  Did you confirm with him that with

5     regard to Count 12 and his guilty plea to Count 12, that he

6     wanted to maintain his plea to that count because that portion

7     of the agreement was originally reached with his prior

8     counsel.

9          Did you confirm that he wanted to maintain his

10    agreement with the Government?

11         MR. MIEDEL:  Yes, Your Honor.

12         THE COURT:  All right.

13         Mr. Lopez-Perez, I've just asked Mr. Miedel a series

14    of questions.

15         In your view, were his answers to those questions

16    correct?

17         THE DEFENDANT:  Yes.

18         THE COURT:  So, is it correct then that Mr. Miedel

19    has gone over thoroughly with you the amended plea agreement,

20    3-A?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you believe that you understand all

23    of the provisions of that plea agreement, 3-A?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Is there anything in the plea agreement

Proceedings                                    41

1   that is not clear that you would like the Court to explain to

2   you in any further detail?

3           THE DEFENDANT:  No.

4           THE COURT:  Did the Government make some promise to

5   you that is not in this agreement?

6           THE DEFENDANT:  No.

7           THE COURT:  All right.  And it was, in fact,

8   translated to you; correct?

9           THE DEFENDANT:  Yes.

10          THE COURT:  I understand that you don't read

11  Spanish, but it was translated to you in Spanish, in other

12  words, read to you?

13          THE DEFENDANT:  Yes.  Yes.

14          THE COURT:  All right.

15          There are a couple of parts of the agreement I want

16  to bring to your attention.

17          According to you plea agreement at page 6, you have

18  agreed not to ask the Court to sentence you to a sentence less

19  than 188 months.

20          Do you understand that you have reached that

21  agreement with the Government?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And did you discuss that with

24  Mr. Miedel, whether you should have agreed to that provision?

25  Did you discuss that with him?

Proceedings                                    42

1          THE DEFENDANT:  Yes.  Yes.

2          THE COURT:  There is another part of the provision I

3    also want to bring specifically to your attention because it

4    involves giving up another right that you have, and that is at

5    paragraph 4.

6          It says the defendant agrees not to file an appeal

7    or otherwise challenge by a petition pursuant to

8    28 U.S.C. Section 2255, or any other provision, the conviction

9    or sentence, in the event that the Court imposes a term of

10   235 months or below.

11         Now what that means is, if the Court imposes a

12   sentence of 235 months, or something less, that you are

13   agreeing to give up your right to challenge that sentence

14   before a higher court.

15         In other words, even if you thought that I made some

16   mistakes in imposing your sentence, according to the terms of

17   your plea agreement, you cannot appeal the Court's decision as

18   long as it is 235 months or something less.  You are giving up

19   your right to challenge that sentence.  It is a right you

20   would otherwise have.

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Also, you are giving up your right to

24   come back at a later time after your sentence has been imposed

25   and when you are serving the sentence, often defendants will

Proceedings                                    43

1    file, you heard me make reference to 28 U.S.C. Section 2255,

2    that is a form of a habeas corpus petition.

3            Often defendants if they have been in prison for

4    some time, may believe that there is a defect in their

5    conviction or sentence, and they will file such a petition.

6    You are also giving up your right to file that kind of

7    petition, again, under the same circumstances, if I give you a

8    sentence of 235 months or something less than that.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  All right.  Let me go over now what the

12   maximum penalty for the offense charged in Count 3 is.

13           Now, the maximum term of imprisonment for a

14   violation of even the lesser included offense of Count 3, the

15   one I am told you are going to allocute to, that is life.  The

16   maximum term is lifetime in prison.

17           Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  There is a mandatory minimum period of

20   ten years.  What that means is under the law, I cannot give

21   you, if you plead guilty to Count 3, and I accept that guilty

22   plea, I cannot give you a sentence of less than ten years in

23   prison.

24           Do you understand that?

25           THE DEFENDANT:  Yes.

Proceedings                    44

1          THE COURT:  There is also a provision for supervised

2     release.  Now, supervised release is a period of time that

3     would begin after you served your prison term.  You serve

4     whatever prison term is imposed and then you are released on

5     to what they call supervised release.

6               In this case the maximum term of supervised release

7     could be lifetime supervised release.

8               Now, there is another mandatory minimum of five

9     years.  That means at that I would have to put you on

10    supervised release for at least five years, I have no choice

11    about that.

12              Do you understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  Now, if you violated any of the terms or

15    provisions of your supervised release, I could then send you

16    back to prison for five full years without giving you any

17    credit for the time that you spend on supervised release.

18              Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  There are financial penalties here.  The

21    financial penalties can be as high as $250,000.

22              Do you understand that?

23              THE DEFENDANT:  Yes.

24              THE COURT:  Now, remember that you have also pled

25    guilty to another count, Count 12, and the Court has the power

Proceedings                                        45

1    to add up penalties, so that means that now by pleading guilty

2    to this count, you face fines of a half million dollars

3    because I add -- you can, under the law, add them together.

4              Do you understand that?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Now, there is also a provision for

7    restitution.  The Government takes the position that

8    restitution here is mandatory and that restitution should be

9    calculated by determining the amount of money that the victim

10   made from the commercial sex acts and was not paid.

11             Do you have any idea with respect to this count what

12   that would be?

13             MS. MERKL:  Your Honor, I believe that the loss

14   estimate submitted by Jane Doe 1 to the Probation Department

15   was in excess of $2 million.

16             THE COURT:  Now, the Court ultimately has to

17   determine the restitution figure.  I have to determine if the

18   theory of restitution is accurate, but you should be advised

19   that what the Government's position is going to be is that

20   restitution here is owed in the amount of $2 million.

21             Do you understand that?

22             MS. MERKL:  In excess of.

23             THE COURT:  Or in excess of 2 million.

24             That is their position, do you understand that?

25             THE DEFENDANT:  Yes.

Proceedings                                              46

1          THE COURT:  There is a hundred dollars special

2    assessment.  I must impose that hundred dollars special

3    assessment.  That means, because there was a special

4    assessment on Count 12, that by pleading guilty now you face

5    two hundred dollars special assessment.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Now, there other penalties associated

9    with the offense.  By pleading guilty to this offense, it

10   provides the basis for you to be removed from the

11   United States.

12         Also, there is a provision that you must register as

13   a Sex Offender Registration.

14         And do you understand those two potential penalties?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And there is forfeiture.  The Government

17   is also going to be asking for forfeiture in the amount of

18   $70,000.

19         Has that been accomplished yet, I don't recall?

20         MS. MERKL:  Your Honor, I believe that we're asking

21   for a forfeiture judgment.  I don't believe these defendants

22   have the assets to pay the forfeiture, so I think we had

23   submitted a draft, proposed orders to the Court in advance of

24   the prior sentencing proceeding holding them jointly and

25   severally liable for that forfeiture money judgment.

Proceedings                                              47

1          But Your Honor, as I indicated, we don't have assets

2    that we seized from them.  This is not that type of case..

3          THE COURT:  What is the defendant's position with

4    respect to forfeiture?

5          MR. MIEDEL:  Well, my understanding from the plea

6    agreement is that Mr. Lopez-Perez completed a financial

7    statement dated May 20th, 2013, indicating he has no assets,

8    and as a result, I think that the Government is simply seeking

9    a judgment.

10         THE COURT:  But, and that is pursuant to paragraph

11   29 of the superseding indictment?

12         MS. MERKL:  Yes, Your Honor.

13         THE COURT:  Am I correct, Ms. Merkl, that he is

14   entitled to a jury determination of the forfeiture?

15         MS. MERKL:  Yes.  If he were to go to trial, he

16   would be entitled to have that presented to a jury.

17         THE COURT:  Is it part of the agreement that he is

18   waiving his right to a jury trial on the forfeiture allegation

19   and permitting the Government to enter the judgment?

20         MS. MERKL:  I believe that's implied, Your Honor,

21   by, this is one of the penalties that could be imposed in the

22   event of jury trial, just as imprisonment could be imposed in

23   the event of a jury trial.

24         THE COURT:  But there would have to be a separate

25   finding of the jury on forfeiture.

Proceedings                                                    48

1            MS. MERKL:  Or the defendant can waive.  Most of the

2     cases in this district, the defendants waive the forfeiture

3     presentation to the jury.  It is at the defendant's option.

4            THE COURT:  Well, it seems like at the very least he

5     is doing one of those two things in connection with his plea.

6            MS. MERKL:  I agree.

7            MR. MIEDEL:  Yes, Your Honor, Mr. Lopez-Perez does

8     not seek a jury trial determination of the forfeiture.

9            THE COURT:  Have you discussed that with him?  Do

10    you want to just talk to him a moment about that?

11           MR. MIEDEL:  Yes, just one moment.

12           (Pause in the proceedings.)

13           THE COURT:  Did you have an opportunity discuss it

14    with him, Mr. Miedel?

15           MR. MIEDEL:  I did, Your Honor.

16           THE COURT:  All right.

17           Mr. Lopez-Perez, I had asked you earlier if you were

18    willing to give up your right to a trial on Count 3, a jury

19    trial on Count 3, and you indicated that you were.

20           You would also have a right to have the jury

21    determine, as charged in Count 29, whether property should be

22    forfeited that had been obtained in connection with this

23    offense.  You would be entitled to a jury trial on that

24    question as well.

25           Are you willing to give up your right to a jury

```
                    Proceedings                    49
```

1   trial on that issue as well?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And have you discussed that issue about

4   whether you should give up that right with your attorney, that

5   specific issue?

6          THE DEFENDANT:  Yes.

7          THE COURT:  All right.  Now one of the important

8   factors that the Court has to take into account in determining

9   what your appropriate sentence should be is what your

10  sentencing guideline turns out to be.

11         Have you discussed Sentencing Guidelines with

12  Mr. Miedel and how those guidelines are calculated?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Now, the Government, in your plea

15  agreement letter, I believe your guideline estimate is still

16  on page 5, 188 to 235, Ms. Merkl?

17         MS. MERKL:  Yes, that's correct, Your Honor.

18         THE COURT:  So, the Government believes that your

19  guideline range would be in the amount of 188 to 235 months.

20         Again, that is just an estimate.  You may remember

21  in the last proceeding there was a lot of discussion as to

22  what the guideline range should be, and you will also remember

23  that it is my determination about what the baseline range

24  should be, and my calculation could always be higher than what

25  the Government has set forth.

Proceedings                                          50

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Now, also, as you may well recall from

4    prior discussions, I have not bound to follow a guideline

5    range once I do determine what it is.  There are other factors

6    I can take into account.  The seriousness of the offense, the

7    need to promote respect for the law, the need to provide just

8    punishment, to consider deterrence to criminal conduct.  I

9    also have to consider your own history and characteristics.

10         So, those are all other factors that I consider

11   together with what I believe the guideline range should be.

12   It is always possible that I can impose a sentence that is

13   higher than a recommended guideline range.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Also, the Federal sentencing system is

17   different from the State sentencing system that we have.

18   There are no parole boards or parole commissions so what you

19   should understand is whatever sentence you do receive will be

20   pretty close to the actual amount of time you have to spend in

21   prison.  You don't have the opportunity to appeal to a parole

22   board to get out early because there are no parole boards in

23   this system.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

Proceedings                                    51

1          THE COURT:  Finally, if you enter a guilty plea

2    today, your guilty plea will stand.  You cannot come back to

3    court at the time of sentence and tell me you have changed

4    your mind, you want to go to trial.  At that point it is too

5    late.

6          Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  So, Mr. Lopez-Perez, do you have any

9    questions that you want to ask the Court about the new charge

10   that you are pleading guilty to, your rights, or anything else

11   at all related to this matter that might not be clear?

12         THE DEFENDANT:  No.

13         THE COURT:  Mr. Miedel, do you know of any reason

14   why your client should not enter this plea of guilty to the

15   charge in Count 3?

16         MR. MIEDEL:  No, Your Honor.

17         THE COURT:  Are you ready to plead?

18         THE DEFENDANT:  Yes.

19         THE COURT:  How do you plead to the charge in

20   Count 3; guilty or not guilty?

21         THE DEFENDANT:  Yes.

22         THE COURT:  No, are you pleading guilty or not

23   guilty?

24         THE DEFENDANT:  Guilty.

25         THE COURT:  Are you making this plea of guilty

Proceedings                                    52

1  voluntarily and of your own free will?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Has anyone threatened, forced, or

4  pressured you in any way to plead guilty?

5           THE DEFENDANT:  No, no.

6           THE COURT:  Other than the agreement with the

7  Government, has anyone made you promises that have caused you

8  to plead guilty?

9           THE DEFENDANT:  No.

10          THE COURT:  Has anyone promised you what sentence

11  you would receive?

12          THE DEFENDANT:  No.

13          THE COURT:  All right then, Mr. Lopez-Perez, I need

14  to hear from you in your own words what you did in connection

15  with the charge in Count 3.

16          MR. MIEDEL:  Your Honor, in light of the fact that

17  Mr. Lopez-Perez is illiterate and has no education, as you

18  know, he can't read a statement into the record about the

19  allocution.  So, he and I have prepared a statement together

20  that I would like to read into the record, and then I would

21  ask you to ask him to affirm the correctness of, and ask any

22  follow-up questions that you have.

23          THE COURT:  Does the Government object to that

24  procedure?

25          MS. MERKL:  No, Your Honor, as long as

Proceedings                                53

1   Mr. Lopez-Perez affirms each fact.

2          THE COURT:  Okay.

3          MR. MIEDEL:  So, Your Honor, as to Count 3 of the

4   indictment, during the period alleged in the indictment,

5   July 2005 and December 2008.

6          THE COURT:  Can I just ask one question, I'm sorry

7   to interrupt.

8          In December of 2008, was the victim not yet 18?

9          MS. MERKL:  I don't believe so, Your Honor.  I

10  believe her birthday was in September.

11         THE COURT:  Of what?

12         MS. MERKL:  It was '90 or '91 is her birth date, so

13  I believe she turned 18 during this period, 2005 to 2008.

14         THE COURT:  Don't we need to have the allocution

15  prior to the time she turned 18?

16         MS. MERKL:  Yes, he said between 2005 and 2008.

17         THE COURT:  Yes, but at some point in 2008, she

18  is 18.

19         MR. MIEDEL:  I think they do 2007 because this

20  conduct occurred between 2005 and 2007 as well.

21         MS. MERKL:  That's fine, Your Honor.

22         THE COURT:  So, you want to limit it to 2005 to

23  2007?

24         MR. MIEDEL:  Yes.

25         Between the period of July 2005 and December 2007,

Proceedings                                54

1    I, knowingly with others, did intentionally house and

2    transport a woman referred to in the indictment as Jane Doe 1

3    for the purpose of engaging in prostitution.

4              I did so by arranging for her to be transported from

5    Mexico to New York in Queens.  In Queens, I housed her in an

6    apartment and arranged for her to be transported to various

7    locations for the purpose of prostitution.

8              I benefitted financially from her prostitution

9    activities and did so knowingly.  I knew that she was younger

10   than 18 years old at the time.

11             THE COURT:  Mr. Lopez-Perez, did you understand each

12   of the things your counsel just said?

13             THE DEFENDANT:  Yes.  Yes.

14             THE COURT:  Is that statement that was made on your

15   behalf by counsel, is everything that was said in that

16   statement accurate?

17             THE DEFENDANT:  Yes.

18             THE COURT:  This woman, who's been called

19   Jane Doe 1, did you also know her to use the name Carmen?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And I take it, counsel, you have

22   discussed with the Government their evidence underlying this

23   account and you are satisfied that Jane Doe 1/Carmen is a

24   person who exists and the person about whom your client is

25   speaking.

Proceedings                                                55

1          MR. MIEDEL:  Yes, I have.

2          THE COURT:  Does the Government think anything

3    further needs to be said?

4          MS. MERKL:  Your Honor, I believe at the prior

5    proceeding you asked the question directly to the defendant

6    and I just quote from page 57 of the transcript, you asked him

7    directly, did you know that the person that you have just

8    talked about, the person you call Carmen that was brought here

9    for prostitution, did you know she was not yet 18 years old.

10         I would request that you just confirm it directly

11   with him because of Mr. Miedel's statement for the allocution.

12   I would just like to confirm the facts that he brought her

13   here, that he knew her to be under 18 at the time, and that

14   she was transported to from Queens from Mexico.

15         THE COURT:  Mr. Lopez-Perez, did you bring the woman

16   identified as Carmen from Mexico to the United States?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Did you find a place for her to reside

19   here?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Between the dates of 2005 and 2007, did

22   you cause her to go out and commit acts of prostitution in

23   Queens?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And did you take the money that she made

Proceedings                              56

1    doing that from her?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Did you know that at the time that you

4    did that, that she was under the age of 18?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Anything else, Ms. Merkl?

7              MS. MERKL:  Your Honor, I think that that is

8    sufficient.

9              THE COURT:  Mr. Miedel, do you believe that those

10   statements satisfy an allocution to that count?

11             MR. MIEDEL:  I do.

12             THE COURT:  All right.  Based on the information

13   given to me, I find the defendant is acting voluntarily, he

14   fully understands the charge, his rights and the consequences

15   of his plea, and that there is a factual basis for the plea.

16             So I therefore accept the plea of guilty to Count 3.

17             Mr. Miedel, do you intend to make any additional

18   sentencing submission on behalf of the defendant?

19             MR. MIEDEL:  I may file a brief addendum or submit

20   the additional submission, and I'll do so within whatever time

21   you wish to receive it.

22             THE COURT:  Can you do that by a week from today?

23             MR. MIEDEL:  Can I do it two weeks before

24   sentencing, whenever that is.

25             THE COURT:  When is two weeks before sentencing?

Proceedings                                        57

1              MR. MIEDEL:  It would actually be --

2              THE COURTROOM DEPUTY:  January 24th.

3              THE COURT:  And the week after that would be what,

4      Ms. Holley.

5              THE COURTROOM DEPUTY:  January 31st, Judge.

6              Is that for the Government to respond?

7              THE COURT:  Right.

8              So if you want to make an additional submission, you

9      make it on January 24th.

10              And the Government could respond to that by the

11      31st.

12              There will have to be an amended PSR, because the

13      PSR needs to reflect the charge the defendant pled guilty to,

14      so I take it the Government will notify the

15      Probation Department of what has taken place.

16              MS. MERKL:  Certainly.

17              THE COURT:  Okay.  And that should be, if they can

18      do it by, I would ask that they try to do it by January 20th.

19              MS. MERKL:  Your Honor, I expect that it will not be

20      a lengthy amendment for them since the underlying facts are

21      all contained within the PSR.  It's a matter of changing the

22      count numbering.

23              I will contact Probation immediately after court and

24      provide them with the new plea agreement.

25              THE COURT:  All right.

Proceedings                    58

1          Now, I don't know whether other defendants are going

2    to make any other objections to issues that the Government has

3    raised with respect to either restitution, I guess there were

4    submissions on the restitution question by the defense?

5          MS. MERKL:  I don't think there was any response to

6    the Government's supplemental letter that provided support to

7    the Court.  I haven't seen anything.

8          THE COURT:  All right.  If there is going to be in

9    any response to the issues of restitution or the issues

10   regarding those withins, providing their identity to the Court

11   at the time that they speak, you now know for certain that the

12   Government is not going to take the position that they are now

13   going to trial on all the charges here.

14         So, there is nothing left open for the Defense

15   Counsel to be concerned about that would prevent them from

16   responding to these two issues.

17         So, any response to these issues need to be filed by

18   January 17th, a week from today.

19         MR. MORRIS:  Your Honor, may I just ask for an

20   additional week, because I know Mr. Kirchheimer's going to be

21   back on January 15th, and I think he would need more than two

22   days, or he might need more than two days to prepare his

23   response.

24         THE COURT:  Well, he has known for some time what

25   the Government's position is with respect to these victims,

Proceedings                                      59

1  about them saying their identity or not saying their identity.

2  I don't know why he would need an entire week.  But since he's

3  just getting back on the 15th, the 17th is a Friday?

4            THE COURTROOM DEPUTY:  Yes, Judge.

5            THE COURT:  Then his response can be the following

6  Monday.

7            MR. MORRIS:  Thank you, Judge.

8            MR. RADICK:  Is that just for him or for everyone?

9            THE COURT:  That's just for him.

10            THE COURTROOM DEPUTY:  That's a holiday.

11            THE COURT:  Oh, it is.  Then the 21st.

12            MR. MORRIS:  Thank you, Judge.

13            THE COURT:  Is there anything else that either side

14  thinks that we need to take up?

15            MR. MIEDEL:  No, Your Honor.

16            MS. MERKL:  No, thank you, Your Honor.

17            THE COURT:  All right.  Thank you.

18            ALL:  Thank you.

19            (Matter concluded.)

20

21                         ooo0ooo

22

23

24

25

VB        OCR        CRR